# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

       v.                                     **Case No. 15-CR-47**

**COREY MITCHELL**
        **Defendant.**

## DECISION AND ORDER

The government charged defendant Corey Mitchell with armed bank robbery and use of a firearm during a crime of violence. Defendant moved to suppress the evidence obtained following his arrest, arguing that the police lacked probable cause to seize him, and to suppress an identification made by a witness at a post-arrest lineup, arguing that the police violated his Sixth Amendment right to counsel.[1] The magistrate judge handling pre-trial proceedings in this case held an evidentiary hearing, then issued a recommendation that the motion be denied on the probable cause claim but granted on the line-up claim. Both sides objected. Reviewing the matter de novo, see Fed. R. Crim. P. 59(b), I decided to hold a supplemental hearing on the probable cause issue. For the reasons that follow, I now adopt the recommendation.

## I. FACTS AND BACKGROUND

On March 6, 2015, Milwaukee police officer Joshua Albert and his partner responded to the robbery of a U.S. Bank branch located on 52nd Street and West North Avenue. A police

---

[1]Defendant also raised but later abandoned claims under McNabb/Mallory and Riverside based on delays in getting him before a United States magistrate judge for a probable cause determination.

dispatcher provided Albert with the suspect's location, indicating that the information came from a "confidential source." Albert located the suspect vehicle, which followed the path reported in subsequent police dispatches from the source, then arrested defendant after he pulled over. Prior to the arrest, Albert had no information about the suspect other than what the dispatcher told him about the suspect's location and direction of travel. Officers searched defendant's person and vehicle, recovering evidence from the robbery, and defendant later made incriminating statements.

On the morning of March 8, 2015, based on a paper-only review of the sworn statement of a Milwaukee police detective, a Milwaukee County court commissioner found probable cause that defendant committed the robbery and set bail at $50,000. Defendant did not personally appear in front of the commissioner at that time, but a copy of the probable cause statement and judicial determination was distributed to him. (See R. 23-1.) Later that day, a witness picked defendant out of a line-up arranged by Milwaukee police and FBI agents; defendant was not represented by counsel during this procedure. On March 9, 2015, the government decided to prosecute the case, obtaining a federal criminal complaint the following day. Defendant appeared in front of a U.S. magistrate judge on March 11, 2015.

After defendant moved to suppress the physical evidence seized and statements he made following his arrest, the government disclosed that the police dispatcher relied on GPS data (not a human source) in advising Officer Albert of the suspect's whereabouts. At the evidentiary hearing before the magistrate judge, FBI Special Agent Benjamin Hruz, the bank robbery coordinator for Wisconsin, testified that banks in this jurisdiction secrete a transponder inside money packs, which transmits a signal to law enforcement after the money is removed. In Milwaukee, the signal is received by the "Intelligence Fusion Center," which then broadcasts

2

updates regarding the location of the device to the applicable police district. Hruz identified a map and data report pertaining to the March 6 robbery provided by the GPS company, which traced the movement of the transponder from the U.S. Bank branch to the location of defendant's arrest. (May 12, 2015 Hr'g Ex. 1 & 2.) Hruz acknowledged that he was not in the fusion center when the robbery occurred and did not personally know what the officer was looking at when he broadcast the suspect's location. However, Hruz did indicate that Milwaukee police refer to the GPS tracker as a "confidential source." (May 12, 2015 Evid. Hr'g Tr. at 11-16.) The government also introduced an audio recording of the dispatch call, which captured the fusion center officer's broadcast of location information matching the GPS data identified by Hruz.² (May 12, 2015 Hr'g Ex. 3.)

The magistrate judge found that the officers had probable cause to arrest defendant based on the GPS data. In his objections, defendant noted that the government failed to present direct evidence that the dispatcher directed Officer Albert based on the GPS data identified by Agent Hruz. To clear up any uncertainty, I held a supplemental hearing to receive testimony from the fusion center officer. See United States v. Meyer, 157 F.3d 1067, 1077-78 (7th Cir. 1998) (affirming district court's decision to hold additional evidentiary hearing).

---

²The recording indicates that the fusion center received a report of a robbery at 5220 W. North Avenue (U.S. Bank), and the dispatcher in turn advised unit #3225 (Officer Albert's squad) of the crime. The fusion center then relayed the suspect's location and direction of travel as indicated on the map and data sheet Hruz provided: southbound on 50th Street approaching Garfield Avenue; northbound on 48th from Garfield, approaching Lisbon (at which point another officer responded that he was at the bank and confirmed the robbery); northbound on 46th from North, approaching Meinicke; at 46th and Wright; and on 45th Street, just south of Wright, stationary. (May 12, 2015 Hr'g Ex. 3.) Officer Albert testified that he arrested defendant on 45th Street, south of Wright. At the hearing before the magistrate judge, the parties stipulated that officers found the GPS tracking device on defendant's person when he was arrested. (May 12, 2015 Evid. Hr'g Tr. at 3.)

3

At the supplemental hearing, Officer Christopher Heidamann described the fusion center's electronic satellite pursuit program. When a bank teller hands over "bait money" during a robbery, a GPS tracker is activated. Once activated, fusion center officers hear an alarm and see the location, name, and phone number of the affected business. Officers are then able to follow the GPS device – depicted as a red dot on a city map on their computer screen – as it moves. Heidamann testified that in his experience both in the fusion center and on the street the GPS data is very accurate.[3] The only "errors" he recalled were instances in which employees accidentally tripped or activated the GPS device inside the business.

Heidmann testified that on March 6, 2015, he responded to the alert for the U.S. Bank robbery, saw the suspect's movement on the computer, and broadcast that information to district #3. He confirmed that the map introduced at the previous hearing by Hruz reflected what he saw and broadcast. He also confirmed his voice on the recording of the dispatch call previously introduced. Finally, Heidamann testified that, pursuant to department policy, he referred to the GPS device as a confidential source during this call.

## II. DISCUSSION

**A.  Probable Cause**

Probable cause exists when, at the time of the arrest, the police possess reasonably trustworthy information sufficient to warrant a prudent person in believing that the suspect committed an offense. Beck v. Ohio, 379 U.S. 89, 91 (1964). It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. United States v. Navarro, 90 F.3d 1245, 1253 (7th Cir. 1996).

---

[3]Heidamann discussed four instances in which the data led to arrests. He further indicated that he received training in the use of this technology from other officers.

At the time he arrested defendant, Officer Albert knew nothing about the robbery suspect other than his location and direction of travel. However, the officer who actually makes an arrest need not personally know all the facts that constitute probable cause if he reasonably acts at the direction of another officer or police agency. In such a case, the arrest is proper so long as the knowledge of the officer directing the arrest (or the collective knowledge of the agency he works for) is sufficient to constitute probable cause. United States v. Randall, 947 F.2d 1314, 1319 (1991).

In this case, Officer Albert seized defendant based on the GPS data broadcast by the transmitter taken from the U.S. Bank location during the robbery. As Agent Hruz and Officer Heidamann explained, these transmitters, once activated and removed from the bank, allow fusion center officers to track the suspect in real time, broadcasting his location to the pertinent police district. Heidamann testified that he relied on the GPS data set forth on the map introduced in evidence in directing the officers in this case.

Courts have taken judicial notice of the accuracy and reliability of GPS technology,[4] see, e.g., United States v. Brooks, 715 F.3d 1069, 1078 (8th Cir. 2013) (affirming admission at bank robbery trial of GPS data from the same company at issue in the present case), and Officer Heidamann testified that in his experience, both in the fusion center and in making arrests in the field, such data is very reliable.[5] Officer Albert's observations of the suspect vehicle, which

---

[4]In his objections, defendant cites cases involving confidential informants, but those cases are inapposite, as GPS data does not present similar concerns of veracity and reliability. In any event, Officer Heidamann testified regarding the track record of GPS data in apprehending robbery suspects in this district.

[5]Heidamann did not know whether the data first went to the private GPS company before it was transmitted to law enforcement. However, given Heidamann's clear explanation of how the system worked and his experience with its accuracy, I cannot conclude that this

5

followed the path relayed by the fusion center through dispatch, confirmed the reliability of the data in this case. See Navarro, 90 F.3d at 1253-54 (finding that police verification of tip regarding suspect's path of travel supported probable cause); cf. Navarette v. California, 134 S. Ct. 1683, 1688 (2014) (distinguishing Florida v. J.L., 529 U.S. 266 (2000) as a case where the tip included no predictions of movement that could be corroborated). Finally, Albert testified that defendant's vehicle was the only one that corresponded to the suspect's; this was not an instance in which multiple vehicles could have matched the description provided by dispatch.[6]

Officer Albert acquired probable cause to arrest defendant based on the reliable GPS data broadcast by Officer Heidamann after the bank robbery alert. Defendant's motion to suppress based on the lawfulness of his arrest will be denied.

**B.    Line-up**

The Sixth Amendment guarantees a defendant the right to have counsel present at all "critical stages" of the criminal proceedings, including arraignments, post-indictment interrogations, and post-indictment line-ups. Missouri v. Frye, 132 S. Ct. 1399, 1405 (2012);

---

defeats probable cause.

[6] Albert testified that he stopped his patrol car at 49th and North, receiving an update that the suspect was traveling north on 48th from Garfield, which is one block south of 49th and North. As that dispatch came in, Albert looked a block over and observed one vehicle pulling up to the stoplight. Because this was the only vehicle at that location, Albert concluded that it was the suspect. The vehicle made a right turn onto North Avenue, traveling eastbound. Albert then received an update that the vehicle was going north on 46th. He testified that he watched the vehicle that turned off 48th Street the entire time and observed the same vehicle turning north on 46th Street from North Avenue. At that time, Albert broadcast a description of the vehicle, then proceeded to turn north on 46th Street towards West Wright Street, then turned east onto Wright, at which time he received an update that the suspect was now proceeding southbound on 45th Street. Albert turned south on 45th, observing the same vehicle he had seen on 48th Street pulled over with the driver's side door open. There were no other vehicles in the vicinity. (May 12, 2015 Evid. Hr'g Tr. at 33-41.)

6

see also United States v. Wade, 388 U.S. 218, 237 (1967) (holding that post-indictment line-up was critical stage). In Rothgery v. Gillespie County, Tex., 554 U.S. 191, 213 (2008), the Court held that "a criminal defendant's initial appearance before a judicial officer, where he learns the charge against him and his liberty is subject to restriction, marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel."

In United States v. West, No. 08-CR-157, 2009 WL 5217976, at *9 (E.D. Wis. Mar. 3, 2009) (Goodstein, M.J.), the court concluded that, even though the defendant does not personally appear before the court commissioner under Milwaukee County's Riverside procedure, the substance of the procedure is the same as in Rothgery – the judicial officer finds probable cause, fixes bail, and (via distribution of the form) informs the defendant of the preliminary charges against him. The court accordingly found that the right to counsel attached on the commissioner's probable cause finding, and that a subsequent un-counseled line-up violated the Sixth Amendment. Id. at *10. The magistrate judge recommended that I follow West in the present case. The parties cite no other authority addressing this precise issue, and I have found none.

The government relies on United States v. States, 652 F.3d 734, 741 (7th Cir. 2011), where the court held that a defendant's Sixth Amendment right to counsel does not attach with the filing of a criminal complaint, but that case is distinguishable. The mere filing of a complaint under Fed. R. Crim. P. 3 does not advise a person of the charges against him or, in itself, restrict his liberty. That occurs later, after the person is arrested and makes an initial appearance before a magistrate judge. See Fed. R. Crim. P. 5(d) (indicating that at the initial appearance the magistrate judge must inform the defendant of, inter alia, the complaint against him, his right to counsel, and the circumstances under which he may secure pretrial release;

7

and must detain or release the defendant).[7]

As indicated in West, Milwaukee County's Riverside procedure is substantively identical to the Gillespie County, Texas procedure discussed in Rothgery.

> The process in Milwaukee County may be less formal, and certainly less time consuming than that utilized in Gillespie County, but substantively, the results are the same. A judicial officer reviewed a sworn statement outlining the factual basis for the charges against the arrestee, the judicial officer found probable cause, the judicial officer established bail for the arrestee, and the arrestee was informed of the charges against him. Notably, the Court in Rothgery was careful to avoid creating a rule where a defendant's constitutional rights varied from jurisdiction to jurisdiction based upon the procedures and sophistication of the participants in the criminal justice system. A conclusion regarding a defendant's Sixth Amendment right to counsel based on form, i.e. the physical appearance before a judicial officer, rather than substance, i.e. a judicial officer finding probable cause, fixing bail, and the arrestee being informed of the preliminary charges against him, would lay the groundwork for absurd results that are antithetical to constitutional aims.

West, 2009 WL 5217976, at *9 (internal citation omitted). Further, the Rothgery Court found immaterial the prosecutor's absence from the Texas hearing, 554 U.S. at 198-99, so the defendant's absence under Milwaukee County's procedure should not be determinative.

Violation of the accused's right to counsel results in suppression of the identification from the line-up, but the witness may be allowed to make an in-court identification if the government shows by clear and convincing evidence that there is an independent basis for it. United States v. West, 628 F.3d 425, 428 (7th Cir. 2010). In making this determination, the court considers the prior opportunity to observe the alleged criminal act, the existence of any

---

[7] In its objections, the government contends that if the filing of a federal criminal complaint precedes the start of adversary judicial proceedings, surely a probable cause determination, at which time a defendant similarly does not learn of the charges against him, precedes the start of adversary judicial proceedings. However, the government does not object to the magistrate judge's finding that under Milwaukee County's procedure the accused receives notice (via distribution of the form) of the charges on which the commissioner found probable cause.

8

discrepancy between any pre-line-up description and the defendant's actual description, any identification prior to line-up of another person, the identification by picture of the defendant prior to the line-up, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the line-up identification. Id. at 429. I agree with defendant and the magistrate judge that it is appropriate to defer for trial a ruling on any in-court identification by the witness.

### III.  CONCLUSION

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation (R. 34) is adopted, and defendant's motion to suppress (R. 16) is **DENIED** in part and **GRANTED** in part, as stated herein.

**IT IS FURTHER ORDERED** that this case is scheduled for **STATUS** on **Tuesday, September 22, 2015, at 11:00 a.m.**

Dated at Milwaukee, Wisconsin, this 17th day of September, 2015.

/s Lynn Adelman
LYNN ADELMAN
District Judge

9